ATTORNEY GENERAL *v.* CONNOLLY.

1. CONSTITUTIONAL LAW—TEACHERS' PENSION—STATUTES — CLASS LEGISLATION—SCHOOLS—CONTRACTS.

The provisions of Act No. 174, Pub. Acts 1915, 2 Comp. Laws 1915, §§ 5767-5780, providing for the establishment of a teachers' pension fund, and providing for contributions from the compensation of those who are actively engaged in their employment to maintain it, are not class legislation, and are not in violation of the Constitution, because the classification of teachers as one employment is reasonable and justifiable; whether such contract will encourage or promote education is a matter for the legislature to determine; any legislation that affects the qualifications, period of service, or reward of teachers acts upon this class.

2. SAME—DUE PROCESS OF LAW—STATUTES.

While the statute affects contributions from teachers, the salaries to be paid constitute a net amount, and the act takes nothing from any one, hence, does not trespass upon the due process prohibition of the Constitutions.

3. SAME—INEQUALITY—TAXATION.

The objection that it is a fund that belongs under the Constitution to the school districts and cannot be taken by the State for a pension fund is untenable as a ground of the invalidity; and whether or not the act effects inequality in contributions by different districts, it is not a reason for holding the law void, as the rule which requires uniformity in taxation does not apply to such districts.

4. SAME—PRIVATE PURPOSE.

The general effect and purpose of the act is not to authorize the expenditure of public money for a private purpose, nor does it award extra compensation to a public agent as forbidden by section 3, Art. 16, of the Constitution. OSTRANDER, J., dissenting.

5. SAME—SCHOOLS—TEACHERS' PENSION—GENERAL ACT — SPECIAL LEGISLATION.

Act No. 174, Pub. Acts 1915, 2 Comp. Laws 1915, § 5767 *et seq.*, creating pensions for teachers, does not violate the section of the Constitution prohibiting extra compen-

sation to public officials and servants, the statute extending similar inducements to teachers already employed and to those who enter public service subject to the pension provisions. Nor does section 14 violate the Constitution, Art. 5, § 30, in that the act does not apply to Detroit until the local retirement fund is discontinued: the general purpose and phraseology of the legislation brings it within the legislative authority. OSTRANDER, J., dissenting.

Quo warranto proceedings by Grant Fellows, Attorney General, against William F. Connolly and others to determine the constitutionality of Act No. 174, Pub. Acts 1915. Respondents demurred to the information. Submitted April 14, 1916. (Docket No. 138.) Writ dismissed December 21, 1916.

*Grant Fellows*, Attorney General, and *L. W. Carr*, Assistant Attorney General, for petitioner.

*William L. Carpenter* and *H. E. Spalding*, for respondents.

OSTRANDER, J. (*dissenting*). Pursuant to provisions found in Act No. 174, Pub. Acts 1915 (2 Comp. Laws 1915, §§ 5767-5780), entitled "An act to provide for a retirement fund for teachers in certain cases," which became effective in August, 1915, the governor appointed respondents members of the teachers' retirement fund board, they with the superintendent of public instruction composing the said board.

The act, by its terms, affects all teachers in the public schools of the State except those who, being under contract when the act takes effect, do not elect to come under its provisions. After the act becomes effective, every teacher contracting to teach in a public school is conclusively presumed, by the act of contracting to teach, to agree to pay and to authorize the deduction from salary necessary to pay "the assessments herein provided." The "assessment" varies.

A teacher who has taught 5 years or less in this State, or elsewhere in a public school, contributes one-half of 1 per cent. of the annual contractual salary, but not more than $5, an amount which the retirement fund board may increase to 1 per cent. of salary, but not more than $10 in any year. One who has taught more than 5 years, but less than 15 years, contributes 1 per cent. of contractual salary, not more than $10, and the said board may increase the contribution to 2 per cent., but not more than $20 in a year. One who has taught 15 years or more contributes 2 per cent., but not more than $20 a year, subject to an increase by the said board to 3 per cent., but not more than $30 in a year. The contributions thus provided for, the income from donations, legacies, and bequests, and the income from the fund, constitute the Michigan State teachers' retirement fund for public school-teachers. The custodian of the fund is the State treasurer, and the board is given power to draw warrants upon him for payment of annuities and for purposes of investment of the fund.

No teacher is entitled to an annuity who has not contributed to the fund an amount equal to his annuity for 1 year, but a teacher, otherwise entitled to retire and to an annuity, may pay into the fund in cash an amount which, with previous contributions, equals an annuity for 1 year, or, if unable to do so, may have the required sum deducted from the annuity, withheld, subject to which restriction retirement and participation may occur by request of a teacher, or upon request of a board of education or other governing body of a school district, which request being approved, various annuities are to be paid, the amount depending, generally, upon the years of service as teacher. A teacher who has taught for a period or periods aggregating 30 years, of which at least 15 years, including the last 5 years of service preceding

the application for retirement, shall have been spent in the public schools of the State, may retire after December 1, 1915, and receive an annuity equal to one-half of the annual contractual salary paid to him during the last 5 years, but not more than $500 nor less than $300. Teachers who have taught 25 years, 15 years and the last 5 years preceding retirement having been spent in the public schools of the State, may retire after December 1, 1915, and be entitled to an annuity "which bears the same ratio to the annuity provided for on retirement after thirty years of service as the total number of years of service of said persons bears to thirty years." And one who has taught 15 years or more in the public schools of the State, being in the judgment of the board physically or mentally incapable of teaching and deemed deserving of an annuity, may be retired and be entitled to an annuity "of as many thirtieths of the full annuity herein provided after thirty years' service as said teacher has taught years in the public schools of this State." "The board shall pass upon all requests for retirement and shall determine whether such requests should be granted."

If a teacher "ceases to teach in the public schools of this State" before receiving an annuity, he or she is entitled, upon application, "to the return of one-half of the amount, without interest, which shall have been paid into the fund by such teacher," the sum so withdrawn, with interest, to be returned to the fund if teaching is resumed. So if one to whom an annuity is paid resumes teaching, the annuity ceases, to be paid upon a subsequent retirement. Unless it is held to come under the provision for repayment to one who ceases to teach and is not an annuitant, the contingency of death of a teacher is not provided for. The words "shall contribute" are used with respect to the action or duty of teachers. "Conclusively agree to

pay or to authorize the deduction from salary of the assessments herein provided" is another form of words used. Boards of education, trustees, and other school officers are required to "cause to be deducted from each installment of salary of such teachers the *pro rata* amount due from such teachers. * * *."

The act is not applicable to any school district in which, in accordance with any special or local act, public school-teachers are required or authorized to contribute to a teachers' retirement fund, or in which teachers are entitled to annuities or pensions. In such school districts, however, upon the request of two-thirds of contributing teachers, and by a majority vote of qualified electors of the district, the local arrangement may be discontinued and the act becomes operative in such district, the local retirement fund being merged in the State fund. The school district of the city of Detroit is the only one affected by the provisions of this section.

The term "teacher" is defined in the act, and includes all persons teachers in schools in the country and in cities and villages, superintendents and assistant superintendents, supervisors of instruction, principals and assistant principals and special teachers, county school commissioners, county normal teachers, the superintendent of public instruction and his deputies. It includes, as well, all persons employed in teaching or in educational work in the Industrial Home for Girls, Industrial Home for Boys, Michigan Employment Institution for the Blind, School for the Blind, School for the Deaf, State Public School, and State Normal Colleges and Normal Schools.

The attorney general, in an information filed in this court, inquires into the right of respondents to hold and enjoy offices as members of said board, contending that the act is invalid because:

"The measure is class legislation in the obnoxious

sense, deprives certain persons thereby affected of their property without due process of law, and likewise deprives them of the equal protection of the laws.

"The measure attempts to authorize the payment of extra compensation after the service has been performed, in contravention of section 3 of article 16 of the State Constitution.

"The act is unconstitutional because it seeks to authorize the expenditure of public money for a private purpose.

"Section 14 of the act is invalid, and renders the entire measure unconstitutional."

Respondents moved to dismiss the information upon the ground that the objections made to the validity of the act are, and each of them is, insufficient in law. There was a rejoinder and prayer for judgment of ouster. For respondents, and for the validity of the act, it is contended that the law in its operation takes no property of the teacher, and takes no contribution at all except by the consent of the teacher; that there is no natural right to teach and the employment of a teacher is, in its nature, public and may be subject to conditions. Assuming, it is said, that the deduction is a real deduction from salary, and not an appropriation of public money measured by a percentage of salaries, there would then be no deprivation of property without due process of law.

The objection that the act provides for giving extra compensation for services performed is, it is said, inconsistent with the first objection made, since it assumes that the pension or extra compensation is provided out of public, and not private, funds, and that in any event it is unsound, because no one may have advantage of the law who is not in service when the law takes effect and thereafter, and but few could, by election, have advantage of the act before the contract of service, existing when the law becomes, or became, operative, expired; that the act does not provide for expenditures of public money for private purposes,

since a public interest which the legislature may recognize is served and promoted.

Lastly, it is argued that if section 14 is invalid, it is not so vital a part of the act as to make it wholly invalid; but said section is not invalid.

To the argument of the attorney general, to the effect that if the contribution be public money, it belongs to the school districts and cannot be taken by the State for a State pension fund, and that to do so would compel an unequal contribution by different districts, it is answered that the rule requiring uniformity of taxation does not apply, and, if it did, a large proportion of the money available to each school district comes from State taxation and the primary school fund. This fund must undoubtedly be used for school purposes, and there is no other constitutional restriction upon its employment. What the State might retain, it may require the districts to use for the same purposes.

In successive Constitutions of the State the legislature has been enjoined to establish and foster a system of primary schools. In the Constitution of 1909, art. 11, § 1, it is declared:

"Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

The educational policy of the State from the year 1817 down to 1874 is, in a measure, reviewed in *Stuart v. School District*, 30 Mich. 69. With the restrictions that a system shall be established whereby a school shall be kept without charge for tuition at least three months in each year in every school district in the State, and that instruction shall be conducted in the English language, there was in the Constitution of 1850 and the prior Constitution no restrictions upon the power of the legislature to establish a primary

school system. *Perrizo* v. *Kesler,* 93 Mich. 280 (53
N. W. 391) ; *Pingree* v. *Board of Education,* 99 Mich.
404 (58 N. W. 333). No other restrictions are found
in the Constitution of 1909, save the one, article 10,
§ 1, that all subjects of taxation now contributing to
the primary school interest fund under present laws
shall continue to contribute to that fund, etc. Gen-
erally, the whole subject of education is for legisla-
tive consideration and control, and it is for the legis-
lature to determine, within other constitutional re-
strictions of its power, in what manner and by what
means schools and the means of education shall be
encouraged. It is not contended, and cannot reason-
ably be claimed, that the legislature may not establish
a system, both for primary and other public schools,
which shall fix the pay, or the salary, of public school-
teachers, with regulations relating to the age, period
of service, and retirement of teachers. If it may do
this, it may likewise determine whether it is wise and
in the general interest of education that in the system
it establishes provision be made for retired teachers
whose qualifications for teaching, periods of service
and salaries it may control. Having made such a pro-
vision, it is for the courts to determine whether the
legislature has traveled beyond any other constitu-
tional limitation upon its powers.

In this proceeding, there is properly involved no
question of the exercise of the taxing power of the
State. Taxes may be levied, now as heretofore, to
support public schools and encourage and foster edu-
cation. No question of legislative interference with
the private right to make contracts is involved, be-
cause the right of a school district to make contracts
with teachers is not a private right. And while teach-
ers are not public officers, they, like all other persons
who engage in public service, are controlled by legis-
lative limitations upon the powers of the municipal

district with which they enter into contract relations.

The act cannot be called *class* legislation. Included in any system of education must be a provision for teachers and for paying them. Teachers render services which are essentially public services. Their avocation, if pursued, sets them apart, in a class. They each become a working unit in the system of education devised by the legislature pursuant to constitutional direction. Any legislation which affects the qualifications, period of service, or reward of teachers acts upon this class. The legislation in question does no more. It is true that one possessing all of the necessary qualifications for teaching does not become one of the class except by contracting to teach. But he must make such a contract as the school district may make. Whether such contracts will encourage and promote education is a matter for the legislature to determine, and, perhaps, for experience to prove, or disprove.

Nor does the act, in its general scheme and purpose as an amendment of the school system, deprive any person of his property. I mean by this that, looking to the purpose of the legislation, it takes nothing from any person. While it speaks of contributions from teachers, still, all of its provisions being considered, it is apparent that the salary to be paid by each school district, to each teacher, is the net, and not the gross, amount of salary agreed upon.

The reasoning so far employed denies the contention that the act in its general purpose authorizes an expenditure of public money for private purposes. It admits, and it is a necessary corollary to the general proposition I have sustained, that the fund which the act seeks to create is a public fund, devoted, it is true, to purposes of education, but beyond the control of any individual, in which the teacher has no private interest and can have none until the happening of the

event upon which private interest is made to depend. Except for this act, the proportion of primary school money which each district receives is devoted to the payment of teachers' wages, or to what is made thereto equivalent (4 How. Stat. [2d Ed.], § 9897, 2 Comp. Laws 1915, § 5678), but a devolution not, however, binding upon the legislature.

While the legislation in respect to its general purpose, and in respect to the legislative power to accomplish the general purpose, may be unobjectionable, it may be that insuperable objections exist to carrying it into effect according to its terms. The argument, and I think the only argument which can be made to sustain the general power of the legislature in this direction, sustains the necessary corollary that the system of education to be established and controlled by the legislature must be one operating uniformly throughout the State, upon all affected persons and in all school districts. As matter of fact, this is the history of all prior general legislation upon the subject. The amendment considered here operates in a part of the State only, and not uniformly upon all persons affected by it. It is made operative in the city of Detroit by election. The school district of the city is excluded, not upon any attempted classification of districts according to the idea that the act ought to be applicable in some and not in others, but because there is there a local retirement fund for teachers.

It is not, however, the case of mere exclusion of certain territory and the inhabitants therein from the operation of a general law. There are two laws upon the general subject, each affecting persons, teachers, as they may or may not be employed in a particular school district. As affecting the status of the teacher, years of service in Detroit count, under the law we are considering, as much as years of service elsewhere in the State. This is an advantage to the teacher

who, having been employed in Detroit, seeks service elsewhere. On the other hand, a teacher, employed elsewhere, who obtains employment in Detroit, is, by accepting a position there, automatically excluded from participation in the fund which the act creates. The purpose to continue the local law is evident.

Although the fund sought to be created is devoted to public schools, and although the legislature has practically plenary powers in the matter of the system of public schools, there are some constitutional restrictions upon the legislative power to use the fund, in the system, to create a system which shall require, or permit, certain dispositions of money. Such a limitation is found in section 3, art. 16, of the Constitution, which denies the authority of the legislature or of any *municipal authority* to grant or to authorize to any public employee or contractor extra compensation after the service has been rendered or the contract entered into. This constitutional provision excludes, I think, as grounds for the appropriation of public moneys, all considerations of charity or gratitude, except that poor persons must be supported by the public.

"Extra compensation is compensation over and above that fixed by contract or by law when the services were rendered." *Mahon* v. *Board of Education,* 171 N. Y. 263, 266 (63 N. E. 1107, 1108, 89 Am. St. Rep. 810).

There is no reason for now affirming or denying the proposition that under our Constitution the State may reward distinguished public service, with a view to the promotion of loyalty and patriotism. *Opinion of the Justices,* 175 Mass. 599 (57 N. E. 675, 49 L. R. A. 564) ; *Opinion of the Justices,* 186 Mass. 603 (72 N. E. 95) ; *Opinion of the Justices,* 190 Mass. 611 (77 N. E. 820) ; *Mead* v. *Inhabitants of Acton,* 139 Mass. 341 (1 N. E. 413). The act does not purport to do

any such thing as that. Nor, as framed, does it extend to all teachers affected by it an inducement to work for moderate pay and to continue in service. If it did, the pension or annuity might be, and I think should be, regarded as not *extra* compensation. But, in terms, the act grants what may be termed a pension to some teachers under contract to teach when it became effective, and it extends its benefits in a measure to certain public elective officers, with salaries, and to others employed wholly outside of the system of public schools.

For the reason that the act, in operation and by its terms, will grant extra compensation to certain persons within the meaning of the constitutional provision, for the further reason that the repeal of the local act governing the Detroit school district, a part of the charter of the city, is left to the determination of a majority of school-teachers (no provision being made for determining the will of the majority nor for enforcing it), and to the electors of the school district, and for the further reason that it is impossible to say that with the objectionable portions of the law eliminated the legislature would have passed it, the act must be held to be invalid, and judgment of ouster entered.

No adjudicated case in which parallel facts were considered is cited. Some of the authorities, to many of which we were referred by counsel, which have been examined, are: 1 Dillon Mun. Corp. (5th Ed.) § 430 *et seq.; Pennie* v. *Reis*, 80 Cal. 266 (22 Pac. 176) ; *Id.*, 132 U. S. 464 (10 Sup. Ct. 149) ; *State, ex rel. Risch*, v. *Board of Trustees*, 121 Wis. 44 (98 N. W. 954) ; *Hughes* v. *Traeger*, 264 Ill. 612 (106 N. E. 431) ; *Pecoy* v. *City of Chicago*, 265 Ill. 78 (106 N. E. 435) ; *Ball* v. *Board of Trustees*, 71 N. J. Law, 64 (58 Atl. 111) ; *Allen* v. *Board of Education*, 81 N. J. Law, 135 (79 Atl. 101) ; *State, ex rel. Heaven,* v. *Ziegen-*

*hein,* 144 Mo. 283 (45 S. W. 1099, 66 Am. St. Rep. 420) ; *Commonwealth* v. *Walton,* 182 Pa. 373 (38 Atl. 790, 61 Am. St. Rep. 712) ; *Commonwealth* v. *Barker,* 211 Pa. 610 (61 Atl. 253) ; *State, ex rel. Ward,* v. *Hubbard,* 22 Ohio Cir. Ct. R. 252, affirmed 65 Ohio St. 574 (64 N. E. 109, 58 L. R. A. 654) ; *Friel* v. *Mc-Adoo,* 101 App. Div. 155 (91 N. Y. Supp. 454), affirmed 181 N. Y. 558 (74 N. E. 1117) ; *Trustees of Exempt Firemen's Fund* v. *Roome,* 93 N. Y. 313 (45 Am. Rep. 217) ; *People, ex rel. Waddy,* v. *Partridge,* 172 N. Y. 305 (65 N. E. 164) ; *State, ex rel. Haberlan,* v. *Love,* 89 Neb. 149 (131 N. W. 196, 34 L. R. A. [N. S.] 607, with note, Am. & Eng. Ann. Cas. 1912C, 542) ; *State, ex rel. Jennison,* v. *Rogers,* 87 Minn. 130 (91 N. W. 430, 58 L. R. A. 663) ; *Stevens* v. *Relief Ass'n,* 124 Minn. 381 (145 N. W. 35, 50 L. R. A. [N. S.] 1018) ; *People, ex rel. Manufacturing Co.,* v. *Board of State Auditors,* 9 Mich. 327 ; *Smith* v. *Auditor General,* 80 Mich. 205 (45 N. W. 136) ; *Beach* v. *Bradstreet,* 85 Conn. 344 (82 Atl. 1030, Am. & Eng. Ann. Cas. 1913B, 946.

BROOKE, J.   My Brother OSTRANDER in his opinion holds that the act under consideration is:

*First. Not* class legislation.

*Second.* That it deprives no person of property without due process of law.

*Third.* That it does not authorize the expenditure of public money for a private purpose.

*Fourth.* That it is unconstitutional because, as framed, it authorizes the taking of extra compensation within the meaning of section 3, art. 16, of the Constitution.

*Fifth.* That it is unconstitutional because of provisions of section 14, which excepts the city of Detroit from its operation.

With reference to the fourth point my Brother says:

"Nor as framed, does it extend to all teachers an inducement, certainly not an equal inducement, to

work for moderate pay and continue long in service, in which case the pension or annuity might be, and I think should be, regarded as not extra compensation."

Under this head the argument is made that the act violates the Constitution because it does not extend an inducement (or an equal inducement), to those teachers in service under contract when the act became effective, nor to certain persons who are made beneficiaries of the act, though not employed in the public school system. This, I take it, means that no inducement is extended to public school teachers under contract when the act took effect, nor to those engaged in educational work in State institutions outside of the public schools, nor to elective educational officers like county school commissioners. I am unable to agree with this conclusion. The educational system is not limited to public schools. It is as much the province of the legislature to promote the efficiency of other departments of the educational system as to promote that of the public schools. The Constitution (section 1, art. 11) provides that:

"Schools and the means of education shall forever be encouraged."

Section 2 provides for the election of a superintendent of public instruction, whose "duties and compensation shall be prescribed by law," and in section 10 it is provided that the legislature shall maintain certain enumerated institutions "and other educational institutions as may be established by law." Whether these other departments of the educational system shall be included in the benefits of a retirement fund is, in my opinion, a matter of legislative discretion. The act under consideration holds out its benefits to all those in educational service when it took effect, whether that service be rendered under contract, through appointment, or by virtue of election; but those benefits are available only upon conditions in-

volving efficiency and continued service. Contracts will not be renewed, reappointments and re-elections will not be secured, unless the service of these employees has, in the past, been found to be satisfactory. There is then an inducement held out to these, as well as to those entering service after the passage of the act, so to perform their duties as to secure continued employment, and this inducement, in view of the classification of the employees according to length of service contained in the act, in my opinion, cannot properly be said to be unequal. It is to be noted that in *Mahon* v. *Board of Education,* 171 N. Y. 263 (63 N. E. 1107, 89 Am. St. Rep. 810), whose definition of extra compensation is quoted in support of the argument under consideration, it is conceded that it would not be extra compensation to include in the benefits of the teachers' pension system those already in employment when the act took effect.

It seems to me to be immaterial whether the inducement be greater or less, for that obviously depends upon the circumstances of the individual. The test would appear to be: Will those to whom the benefits of the act are extended be induced thereby to render better and longer service? Public interest is subserved, not only by inducing persons who are not in the public service to enter, but as well in inducing competent persons already in public employment to continue in it and to render better service, so that they may secure such continuance. Teaching should be made a vocation instead of a stepping stone to another profession, and anything which tends to make the present educational force so regard it is a distinct public benefit.

My Brother OSTRANDER holds the act invalid because of the provisions of section 14. Under the terms of section 14, the act is not to apply to the city of Detroit (where for a number of years a local retire-

ment fund has existed under the provisions of a special statute), until that fund shall be discontinued through local action. The argument is made that this provision destroys the general character of the act, and constitutes a violation of section 30, article 5, of the Constitution, which prohibits the legislature from passing any local or special act where a general act can be made applicable. This position rests upon the assumption that a general law must apply to every portion of the State, and must operate uniformly in each portion, unless different regulations are applied to different districts upon some proper principle of classification. Assuming that this argument is sound, it does not follow that a general law must, to be valid, repeal all local acts which provide regulations for their respective localities different from those of the general act covering the same legislative object. That a proper classification does not destroy the general character of legislation has been determined in this State. *Hayes* v. *Auditor General,* 184 Mich. 39 (150 N. W. 331); *Burton* v. *Koch,* 184 Mich. 250 (151 N. W. 48), and cases cited. A valid classification in a general law must be based upon some real difference or distinction. What could be more reasonable, in an act creating a retirement or pension fund for each of the school districts of the State, than to except therefrom by way of classification such school districts as already have such a law? The general object and purpose of the act is to establish a fund for the payment of annuities or pensions to school-teachers, and if in any school district of the State such a fund has already been established, there was no occasion to make the act applicable to such districts in order to accomplish the object of the act, for the result is that all the school districts in the State after its enactment have retirement or pension funds. I am therefore of opinion that the first portion of section

14 is a valid exercise of the legislative power. That portion of this section following the words, "provided however," is in form a proviso to the preceding proviso or exception, but in reality it is substantive legislation, in that it undertakes to provide a method by which a local teachers' retirement fund may be turned over to the State and be placed in its treasury to be administered by the State retirement fund board, created by the act. Whether it was within the constitutional power of the legislature to provide this method of initiating an election need not now be determined. The occasion may never arise where action is sought under the power of initiation provided. If in the future action is attempted, its validity, in a proper proceeding, may be determined.

The demurrer should be sustained, and the application dismissed.

STONE, C. J., and KUHN, MOORE, STEERE, and PERSON, JJ., concurred with BROOKE, J. BIRD, J., did not sit.