## ATTORNEY GENERAL *v.* CHISHOLM.

1. STATUTES—CONSTITUTIONAL LAW—SCHOOL CODE—IMPAIRMENT OF CONTRACTS.

   Act No. 319, Pub. Acts 1927, commonly called the school code, in repealing the teachers' pension law, Act No. 174, Pub. Acts 1915 (2 Comp. Laws 1915, §§ 5767–5780), is not in conflict with the Constitution (Art. 2, § 9), prohibiting impairment of contracts, since no contract relations · exist between the State and the teachers under the provisions of said pension act; the contributions to the pension fund being public money rather than contributions by the teachers (*Attorney General v. Connolly*, 193 Mich. 499).

2. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' PENSION FUND BOARD—ACCOUNTING.

   On the abolishment of the teachers' pension fund board by Act No. 319, Pub. Acts 1927, rights, if any, which certain teachers may have in the pension fund by reason of contributions thereto of their individual funds to render them eligible to · retirement, may be taken care of in an accounting by said board.

As to vested right of pensioner to pension, see annotation in 54 A. L. R. 943.

3. STATUTES—CONSTITUTIONAL LAW—TITLE OF ACT.
     The title of Act No. 319, Pub. Acts 1927, is broad enough to
       provide for discontinuing the system of teachers' pensions by
       repealing Act No. 174, Pub. Acts 1915 (2 Comp. Laws 1915,
       §§ 5767–5780), the statute under which they were established,
       and therefore does not offend the provision of the Constitution
       (Art. 5, § 21) providing that no law shall embrace more than
       one object, which shall be expressed in its title.

4. SAME—REPEAL BY MISTAKE.
     The court is not justified in holding that the legislature repealed
       a statute by mistake unless it so appear beyond conjecture or
       speculation.

5. SAME—MISTAKE SHOULD BE CORRECTED BY LEGISLATURE RATHER
   THAN COURT.
     If, in including the teachers' pension law (Act No. 174, Pub.
       Acts 1915) in the list of acts repealed by section 1, chap. 37,
       Act No. 319, Pub. Acts 1927, there was a mistake, clerical or
       otherwise, made by the legislature, the mistake should be cor-
       rected by the legislature rather than the courts.

*Quo warranto* proceedings by Wilber M. Brucker,
attorney general, against Nellie B. Chisholm and
others to determine their rights as members of the
teachers' retirement fund board of the State of
Michigan. Submitted May 1, 1928. (Docket No.
176, Calendar No. 33,725.) Judgment of ouster en-
tered January 7, 1929.

*Wilber M. Brucker,* Attorney General, and *Arthur
E. Kidder,* Assistant Attorney General, for plaintiff.

*Person, Marshall & Palm,* for defendants.

FELLOWS, J. Section 1 of chapter 37 of Act No.
319, Pub. Acts 1927, entitled:

"An act to provide a system of public instruc-
tion and primary schools; to provide for the clas-
sification, organization, regulation and maintenance

of schools and school districts; to prescribe their rights, powers, duties and privileges; to prescribe penalties for violations of the provisions of this act; and to repeal all acts inconsistent herewith,"

by its terms repeals Act No. 174, Pub. Acts 1915 (2 Comp. Laws 1915, § 5767 *et seq.*), commonly called "the teachers' pension act." Defendants are members of the board created by the act of 1915, as amended, to administer its provisions, and assumed to function after the act of 1927 became effective, claiming that the repealing act is unconstitutional. The attorney general filed this information in the nature of *quo warranto* to determine that question.

The record discloses that the fund to be administered by defendants now amounts to around $700,000. Some of this has come from the school districts from teachers' salaries, some has come from bequests and donations, some from contributions by teachers to render them eligible to participation in the benefits of the act. What proportion has come from each source does not appear. Defendants, of course, must at some time and in some proceeding account for the fund under their control. This, however, is not the proper case to settle that question as it is only here sought to have determined whether they may function under the act. If the provision repealing the act of 1915 is unconstitutional, they may continue to act; if not, judgment of ouster should be entered.

Briefly stated, it is contended on behalf of defendants, (1) that the relations between the State and the teachers are contractual and beyond the power of the legislature to impair; (2) that the title to the act of 1927 is not broad enough to permit the provision; and (3) that the repeal was due to a clerical error.

A careful examination of the opinion in *Attorney General* v. *Connolly,* 193 Mich. 499, together with the record and briefs in that case, disclose that this court in sustaining the act of 1915 there committed itself to doctrines contrary to those now contended for in behalf of the teachers, and that it so committed itself upon the argument and insistence of those then representing the teachers. Indeed, it is very doubtful if this court had then accepted the views now advanced on behalf of the teachers that the act of 1915 could have been sustained. It was urged against the law that it deprived the teacher of his or her property without due process of law. This was replied to by the claim that the contributions exacted by section 6 of the act were not from the money of the teacher, but were appropriations of public money, and the court sustained this contention. It was urged against the act that, if it was public money, it could not be appropriated for a private purpose. This was combated by the claim that the purpose was a public purpose, a part of the general scheme of educational development to encourage persons to make teaching their life work for the benefit of the cause of education, and this court accepted such contention.

Now, if the contributions to the fund provided for by section 6 of the act are not contributions by the teachers of their money, but are appropriations of public money, and this court so held in the *Connolly Case,* it must be manifest that a contract has not been made between the State and the teacher, and the question of impairment of contracts must be deemed to be settled by that case. While we are doubtless committed by the *Connolly Case,* attention should be called to the recent case of *People, ex rel. Donovan,* v. *Benefit Fund,* 326 Ill. 579 (158 N. E.

220), and the valuable and exhaustive note following the report of the case in 54 A. L. R. beginning at page 943.

In so far as teachers have made payments from their individual funds to render them eligible to retirement, their right to an interest in the fund, if such right existed, may, as we have indicated, be taken care of in an accounting by defendants as trustees. It is apparent that it must be but an insignificant part of the fund of $700,000, which defendants are claiming the right to administer by virtue of the act of 1915, which they insist is still in force, and the exercise of which right is here involved and should be determined.

It is insisted that the act of 1927, in so far as it repeals the act of 1915, offends the following provision found in section 21, article 5, of the Constitution:

"No law shall embrace more than one object, which shall be expressed in its title."

Few provisions of our Constitution are called to our attention more frequently than is this provision, and our decisions dealing with it are numerous. Its purpose has been pointed out in many cases, to a few of which attention will be called. In *Commerce-Guardian Trust & Savings Bank* v. *State of Michigan,* 228 Mich. 316, it was held (quoting from the syllabus):

"The purpose of Art. 5, § 21, of the State Constitution, requiring that 'no law shall embrace more than one object, which shall be expressed in its title,' was, first, to prevent the bringing together into one bill subjects diverse in their nature and having no necessary connection, with a view to combine in their favor the advocates of all, and, second, to challenge the attention of those affected by the act to its provisions."

In *People* v. *Blumrich,* 183 Mich. 133, it was held (again quoting from the syllabus):

"That the title of an act is general, is not ground of objection to it so long as the enactment does not cover legislation that is incongruous, or that cannot be construed to be connected with it, by fair intendment."

And in *Westgate* v. *Township of Adrian,* 161 Mich. 333, the holding was thus expressed in the syllabus:

"Any provisions germane to the subject expressed in the title may properly be included in the act or added thereto by amendment, and it is sufficient if the title fairly expresses the subject or is sufficiently comprehensive to include the several provisions relating to or connected with that subject."

Mr. Justice STEERE, speaking for the court in *Loomis* v. *Rogers,* 197 Mich. 265, 271, said:

"A title is but a descriptive caption, directing attention to the subject-matter which follows. It is obvious that one reading the title would readily understand that the general object of the law was a measure for constructing and improving highways by some method not already fully provided, for which purpose money might be borrowed and taxes assessed and collected within certain limits, and that to ascertain the particulars of the method by which the object is to be accomplished, resort must naturally be had to the body of the act."

A case which is seemingly quite in point is *Connecticut Mut. Life Ins. Co.* v. *State Treasurer,* 31 Mich. 6. The act there involved was entitled: "An act to establish an insurance bureau." Under such title many provisions were found, including the one involved in the case then before the court providing for the collection of a specific tax. It was held that the provision assailed was within the title.

The most casual follower of legislative proceeding reading the title of the act of 1927 would at once conclude that it was intended to revise the school laws and consolidate the acts dealing with our educational department. The act is commonly called the school code. That the act of 1915 served a public purpose and was distinctly an aid to education is apparent from the language found in the majority opinion in the *Connolly Case*. It is obvious that under the title now before us it would have been competent for the legislature to have provided for and established a comprehensive scheme and system of teachers' pensions, such as is found in the act of 1915. It must be equally manifest that if, under such a title, it could establish such a scheme or system, it could under such a title discontinue one. If the creation of such a system was germane to the title, its discontinuance was likewise germane to the title. The act of 1927 is not invalid for this reason.

It is further urged that it was a "clerical error" and "a mistake in identification" of the legislature in repealing Act No. 174 of the Public Acts of 1915, and attention has been called to authorities holding that, where the court is satisfied beyond a reasonable doubt from the face of the act or when read in connection with other acts *in pari materia,* a mistake has been made, the court may correct it. Attention is called to the fact that the legislature at the same session amended the act of 1915 (see Act No. 135, Pub. Acts 1927), and it is suggested that quite likely the legislature intended to repeal Act No. 152, Pub. Acts 1923. Cases may arise where the mistake of the legislature is so palpable a one as to require the court to act, but they will of necessity be cases which are beyond conjecture or speculation. To strike out of section 1 of chapter 37 of Act No.

319, Pub. Acts 1927, the provision repealing Act No. 174, Pub. Acts 1915, would at best be judicial legislation, which should not be indulged, even in a good cause. If this was a mistake, clerical or otherwise, the legislature, which will soon be in session, can correct it. We must decline so to do.

Defendants will be ousted from discharging duties under Act No. 174, Pub. Acts 1915, but the rights of parties to the funds under their control are not hereby adjudicated. As the question is of public importance, no costs will be awarded.

North, C. J., and Fead, Wiest, Clark, and Sharpe, JJ., concurred. McDonald and Potter, JJ., did not sit.