JURVA v ATTORNEY GENERAL

Docket No. 54868. Submitted June 17, 1981, at Lansing.—Decided
    December 1, 1981. Leave to appeal applied for.

William Jurva, Ruth McDonald, and the Rochester Education
    Association brought an action against the Attorney General
    and the Rochester Board of Education, seeking a declaratory
    judgment that an early retirement incentive plan instituted by
    the board was valid and that the Attorney General's opinion to
    the contrary was void. The Attorney General filed an answer
    and a cross-complaint against the board, seeking a declaratory
    judgment that the early retirement plan was a pension plan
    subject to the provisions of the Michigan Constitution pertain-
    ing to such plans, including funding by the board. The plaintiffs
    were permitted to intervene in the cross-action. The plaintiffs
    subsequently moved for summary judgment on both complaints
    on the ground that there existed no genuine issue as to any
    material fact, which motion was granted, Ingham Circuit
    Court, James R. Giddings, J. The Attorney General filed a
    claim of appeal in the Court of Appeals and then sought leave
    to appeal in the Supreme Court prior to a decision by the Court
    of Appeals, which application was denied. *Held:*

    The trial court properly granted the plaintiffs' motion. The
    school board had the power to institute an early retirement
    incentive plan pursuant to that section of the School Code
    providing that a board may provide economic benefits other
    than salary for its employees as a working condition. In addi-
    tion, the board's early retirement incentive plan does not
    conflict with either the Public School Employees Retirement
    Act or the Michigan Constitution.

    Affirmed.

1. SCHOOLS — SCHOOL DISTRICTS.
    School districts enjoy those powers expressly granted them by

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Schools § 15.
[2] 73 Am Jur 2d, Statutes §§ 145, 146, 272, 275, 309.
[3] 60 Am Jur 2d, Pensions and Retirement Funds §§ 39 *et seq.,* 62.
    68 Am Jur 2d, Schools § 53.

statutes or such powers as reasonably may be implied therefrom.

2. STATUTES — JUDICIAL CONSTRUCTION.

A court in construing a statute must ascertain and give effect to the intention of the Legislature.

3. SCHOOLS — SCHOOL DISTRICTS — EARLY RETIREMENT.

A school district may institute an early retirement incentive plan as an economic benefit pursuant to its statutory authority to determine its employees' working conditions, and such a system does not conflict with the provisions of the Public School Employees Retirement Act or the Michigan Constitution (Const 1963, art 9, § 24, MCL 38.201 *et seq.*, 38.1401, 380.1255[1]; MSA 15.893[1] *et seq.*, 15.893[211], 15.41255[1]).

*Foster, Swift, Collins & Coey, P.C.* (by *Karen Bush Schneider)* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F. Young* and *Paul J. Zimmer,* Assistants Attorney General, for defendant Attorney General.

*Thrun, Maatsch & Nordberg, P.C.,* for defendant board of education.

Before: T. M. BURNS, P.J., and D. E. HOLBROOK, JR., and K. B. GLASER,* JJ.

K. B. GLASER, J. Defendant Attorney General appeals from an order of the trial court granting plaintiffs summary judgment. His application for leave to appeal pursuant to GCR 1963, 852.2 was denied by the Supreme Court.

Plaintiffs Jurva and McDonald are teachers, and the Rochester Education Association is their bargaining agent. In 1974, the association and the school board entered into a collective-bargaining agreement for the 1974-1976 school years. This

---

* Circuit judge, sitting on the Court of Appeals by assignment.

agreement contained a provision by which teachers who elected to take early retirement would receive a specific sum of money from the board. The collective-bargaining agreement for the 1976-1978 school years contained a similar early retirement incentive provision.

On June 15, 1978, the Attorney General issued Opinion No 5314, in which he stated that the Public School Employees Retirement Act (PSERA), MCL 38.201 *et seq.;* MSA 15.893(1) *et seq.,* prohibited supplemental retirement benefits and concluded:

"It is my opinion, therefore, that local boards of education may not agree, in a collective bargaining agreement, to provide supplemental retirement benefits to current employees when they retire. Rather, the legislature has established statutory public school employee retirement systems for public school employees to provide uniform retirement benefits for persons with comparable service credit and final average compensation."

Despite the Attorney General's opinion, the board and the association again provided for early retirement incentive payments in the collective-bargaining agreement for the 1978-1979 school year. Under this provision, a teacher who is employed by the board for 10 years and reaches 50 years of age may qualify for the early retirement incentive payments. If the teacher qualified and retired before his 62nd birthday, he received $4,-000 per year for each year between the age at which he retired and his 65th birthday. If he retired after his 62nd birthday, he received $2,000 for each year between his age and his 65th birthday. The payments were made until the teacher reached age 65 or for 10 years, whichever came

first. In light of the Attorney General's opinion, the association agreed to indemnify and hold the board harmless for any payments made pursuant to the early retirement incentive provision, should it be judicially determined to be unlawful.

Plaintiffs brought this action for declaratory relief to determine whether the early retirement incentive provisions were valid and requested that the Attorney General's opinion be declared void. Both plaintiffs and the Attorney General moved for summary judgment. By written opinion, the trial court granted plaintiffs' motion, and denied that of the Attorney General.

The first question is whether the school board had the power to implement early retirement incentives. School districts are empowered to do only what is expressly provided by statute or what reasonably can be implied therefrom. *Senghas v L'Anse Creuse Public Schools,* 368 Mich 557; 118 NW2d 975 (1962), *Singer Architectural Services Co v Doyle,* 74 Mich App 485; 254 NW2d 587 (1977).

Plaintiffs take the position that the school board is authorized to include the early retirement incentive provision in a collective-bargaining agreement by § 1255 of the School Code, which provides:

"In the process of establishing salaries or *determining other working conditions,* the board of a school district or the board of a local act school district may use general funds of the school district *to provide other related benefits of an economic nature* on a joint participating or nonparticipating basis with school employees for employees of the school district." MCL 380.1255(1); MSA 15.41255(1) (emphasis added).

The above-emphasized language was added by 1969 PA 27, and plaintiffs contend that this manifests the Legislature's intent to confer much

broader authority upon school districts in the area of fringe benefits than that which was previously provided by the terms "wages" and "compensation". Support for this position is found in Sachs, *Labor Law,* 16 Wayne L Rev 641, 643-645 (1970).

The Attorney General contends that "other related benefits of an economic nature" necessarily must be a form of compensation and that since early retirement incentive payments are not made for services rendered, but quite the opposite, they are not compensation and the board is not authorized to make them.

As always, the courts' function in construing a statute is to determine the intent of the Legislature. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 248-249; 191 NW2d 307 (1971). Had the Legislature intended to restrict such benefits to compensation for services in the traditional sense, they could have so provided. Having chosen the phrase used instead, we find the broad construction suggested by plaintiffs to be consistent with the intent of the Legislature as expressed in the statute. We further note there is nothing in the School Code prohibiting the encouragement of early retirement. The prospect of early retirement with additional cash income is not a "working condition" in the same sense as are heat, light, and sanitation, but to the extent that it contributes to the teachers' peace of mind and sense of well-being, it is a working condition just as surely as medical insurance, life insurance, or salary. Salaries clearly are included in "working conditions" by reason of the legislative use of the word "other".

Insurance coverage specifically was provided for in the act prior to the 1969 amendment which deleted such specific enumeration of benefits in

favor of the present general language "other working conditions". See 1963 PA 96. The Attorney General does not construe that change to eliminate the school board's power to provide health insurance. OAG, 1979-1980, No 5568 (September 25, 1979). Indeed, the amendment hardly could be reasonably construed to be intended to do anything but give the broadest powers to the board to provide fringe benefits from the general fund, so long as they were reasonably related to the operation of the school. The apparent purpose was to permit a board of education to fashion fringe benefits to the needs and desires of their particular group of employees without the statutory straitjacket imposed by the 1963 act. We have no difficulty including early retirement incentive pay in that broad concept of working conditions.

The next issue is whether the school board's implementation of its early retirement incentive system is in some manner prohibited by the PSERA, MCL 38.201 *et seq.;* MSA 15.893(1) *et seq.,* which controls the resolution of this issue (MCL 38.1401; MSA 15.893[211]; 1980 PA 300).

We note that this act is a very pervasive piece of legislation, essentially mandating participation by all Michigan school districts and their employees, regulating all the various aspects of retirement and payment of benefits, and vesting broad and exclusive power in its governing board.

The Attorney General contends that a fundamental purpose of the retirement act is to encourage teachers to continue in service and that early retirement incentive payments encourage the opposite. This argument, however, ignores the fact that the prospect of having some cash income available upon early retirement may be just the incentive that will induce a teacher to stay in the

system instead of seeking other employment. Describing the purpose of a predecessor of the present act, the Court in *Attorney General v Connolly,* 193 Mich 499, 513; 160 NW 581 (1916), stated:

"Public interest is subserved, not only by inducing persons who are not in the public service to enter, but as well in inducing competent persons already in public employment to continue in it and to render better service, so that they may secure such continuance. Teaching should be made a vocation instead of a stepping stone to another profession, and anything which tends to make the present educational force so regard it is a distinct public benefit."

In any case, since the retirement act itself allows payment of retirement benefits at age 55 when certain conditions are met, we cannot say that the mere incentive to retire at age 50 substantially subverts this particular purpose of the retirement act. MCL 38.215; MSA 15.893(15). Although early retirement incentive payments under the latest provision could begin at age 50, retirees could not draw PSERA benefits until age 55.

The Attorney General further contends that by encouraging employees to retire earlier than customary the early retirement incentive program disrupts the actuarial assumptions of the fund. Simply put, more teachers than predicted will retire in each year during which early retirement incentives are in force. Assuming this claim to be true, we fail to see how this factor would invalidate early retirement incentive payments.

We have found such incentives to be within the powers granted by the Legislature in § 1255 of the School Code, and it simply is not the function of the judiciary to decide whether the benefits of early retirement incentives outweigh any impact

on the teachers retirement fund. The Legislature is obligated to assist in funding the system. MCL 38.227(3),    38.345(3);    MSA    15.893(27)(3), 15.893(85)(3). If it determines that early retirement incentives are creating an undue impact on the fund it can amend the School Code to prohibit them or do otherwise to resolve the problem.

Finally, the Attorney General contends that early retirement incentive payments violate Const 1963, art 9, § 24, which states:

> "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.
> "Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities."

The trial court found that the early retirement incentive payments could not be characterized as a pension plan or retirement system and, in any event, that its method of funding did not violate the above constitutional provision. We believe that is a correct assessment.

The early retirement incentive payments were not benefits tied to time in service with the school district but were compensation for a tenured teacher's waiver of his contractual right to continue employment in the district. Furthermore, no liabilities to the district accrue until and unless a teacher exercises the option to take early retirement. Only then does the school district become contractually bound, and at that time it knows precisely what its liability will be. There is no need for a separate fund because each year the

school district can budget the exact amount necessary to meet its obligation to early retirement incentive beneficiaries. Therefore, the trial court correctly ruled that plaintiffs were entitled to judgment as a matter of law on this issue.

The order of the trial court granting plaintiffs summary judgment is affirmed.

No costs, a public question being involved.