JURVA v ATTORNEY GENERAL

Docket No. 68500. Argued October 5, 1983 (Calendar No. 16).—Decided July 19, 1984.

William Jurva, Ruth McDonald, and the Rochester Education Association brought an action in the Ingham Circuit Court against the Attorney General and the Rochester Community Schools Board of Education, seeking a declaration that an early retirement incentive provision in a collective-bargaining agreement between the association and the board was legal and valid and that an opinion by the Attorney General to the contrary was erroneous. The court, James R. Giddings, J., granted summary judgment for the plaintiffs, holding that early retirement benefits were authorized by the School Code and were constitutional. The Court of Appeals, T. M. Burns, P.J., and D. E. Holbrook, Jr., and Glaser, JJ., affirmed (Docket No. 54868). The Attorney General appeals.

In an opinion by Justice Boyle, joined by Chief Justice Williams and Justices Ryan, Brickley, and Cavanagh, the Supreme Court held:

Early retirement incentives provided to employees of a school district in a collective-bargaining agreement are contractual benefits of an economic nature authorized by the School Code; because they are not paid from a pension or retirement system, they do not come within the purview of the public pension and retirement funding requirements of the constitution.

1. School boards may use general district funds in establishing salaries, determining other working conditions, and providing other related economic benefits. Early retirement benefits are not salaries, but are working conditions within the meaning of the School Code. The term "working conditions" was intended to mean more than the physical environment of the workplace. It, along with the phrase "other related benefits of an economic nature", replaced more specific provisions of earlier versions of the code. The amendments conferred broad authority on school boards to provide other related benefits for

REFERENCE FOR POINTS IN HEADNOTES
[1-5] 60 Am Jur 2d, Pensions and Retirement Funds §§ 42, 77.

school employees. Although early retirement incentives are not compensation for services rendered, a school district benefits by the relinquishment of a teacher's right to continued employment.

2. Any presumed adverse effect of early retirement on the actuarial soundness of the public school employees' retirement system is insufficient to defeat a school board's authority to provide early retirement as a benefit. The legislative history of the grant of the authority evidences a clear intent to permit school boards to provide such benefits.

3. Early retirement incentives are not benefits tied to time in service, but are compensation for the relinquishment of the right to continued employment. The amount of the benefit is measured not by the number of years served, but by the number of years of relinquished employment. Because the retirement incentive is not paid from a pension or retirement system, but is a contractual agreement between the person choosing the incentive and a school district, it does not come within the purview of the public pension and retirement funding requirements of the constitution.

Affirmed.

Justice Levin, joined by Justice Kavanagh, dissented. While early retirement incentives may constitute sound public policy, this is a policy decision the Legislature has reserved to itself. The Legislature has not delegated to the parties in this case the power to determine the policy, with all its fiscal implications for the people of this state. This case was decided by summary judgment without a factual record, and the Court therefore does not know what the cost would be to the state of a decision sustaining the validity of early retirement incentive agreements. It appears that the amounts potentially involved are large. The potential cost has considerable bearing on the likely legislative intent and cannot be responsibly ignored by the Court. The Public School Employees Retirement Act declares a public policy that fringe benefits paid to public school employees from funds of their employers shall not enlarge the cost to the state of funding public school employees' retirement systems.

111 Mich App 595; 315 NW2d 178 (1981) affirmed.

OPINION OF THE COURT

1. SCHOOLS — CONSTITUTIONAL LAW — COLLECTIVE BARGAINING — FRINGE BENEFITS — RETIREMENT INCENTIVES.

Early retirement incentives provided to employees of a school

district in a collective-bargaining agreement are contractual benefits of an economic nature authorized by the School Code; because they are not paid from a pension or retirement system, they do not come within the purview of the public pension and retirement funding requirements of the constitution (Const 1963, art 9, § 24; MCL 380.1255[1]; MSA 15.41255[1]).

2. SCHOOLS — SCHOOL BOARDS — FRINGE BENEFITS.

School boards have broad authority to provide other related benefits for school employees under the statutes authorizing them to determine working conditions and provide other related economic benefits (MCL 380.1255[1]; MSA 15.41255[1]).

3. SCHOOLS — SCHOOL BOARDS — FRINGE BENEFITS — RETIREMENT INCENTIVES.

Any presumed adverse effect of early retirement on the actuarial soundness of the public school employees' retirement system is insufficient to defeat a school board's authority to provide early retirement as a benefit; the legislative history of the grant of the authority evidences a clear intent to permit school boards to provide such benefits (MCL 380.1301 *et seq.*, 380.1255[1]; MSA 15.893[111] *et seq.*, 15.41255[1]).

4. SCHOOLS — CONSTITUTIONAL LAW — RETIREMENT SYSTEM — RETIREMENT INCENTIVES.

Early retirement incentives are compensation for the relinquishment of the right to continued employment, the amount of the benefit being measured not by the number of years served, but by the number of years of relinquished employment; because the retirement incentive is not paid from a pension or retirement system, but is a contractual agreement between the person choosing the incentive and a school district, it does not come within the purview of the public pension and retirement funding requirements of the constitution (Const 1963, art 9, § 24; MCL 380.1255[1]; MSA 15.41255[1]).

DISSENTING OPINION BY LEVIN, J.

5. SCHOOLS — SCHOOL BOARDS — COLLECTIVE BARGAINING — RETIREMENT INCENTIVES.

*School districts are not authorized to agree in a collective-bargaining agreement to pay teachers early retirement benefits; while such a practice may be sound public policy, it is a decision to be made by the Legislature (MCL 380.1255; MSA 15.41255).*

*Foster, Swift, Collins & Coey, P.C.* (by *Karen Bush Schneider),* for the plaintiffs.

*Thrun, Maatsch & Nordberg, P.C.* (by *Robert M. Thrun),* for the Rochester Board of Education.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gerald F. Young* and *Paul J. Zimmer,* Assistant Attorneys General, for the Attorney General.

Boyle, J. The issues raised in this appeal are whether the Board of Education of the Rochester Community Schools has the authority to provide for early retirement incentive payments in its collective-bargaining agreement with the Rochester Education Association, and whether early retirement incentives are contrary to the Michigan constitutional mandate that the financial benefits of a pension plan or retirement system be funded during the fiscal year in which the services upon which the benefits are based are performed. Const 1963, art 9, § 24.

## I. Facts

Plaintiff Rochester Education Association is the exclusive bargaining representative of the teachers and other certified personnel employed by the defendant Board of Education of the Rochester Community Schools. Since 1974, the collective-bargaining agreement between the education association and the board has provided for early retirement incentive payments. For the 1974-1975 and 1975-1976 school years, lump-sum payments ranging from $1,000 to $5,000 were available to teachers between 60 and 65 years of age who retired. Subsequent collective-bargaining agreements also

provided for early retirement incentives, expanding the group of eligible teachers ultimately to those 50 years of age and increasing the amount of the payments. The collective-bargaining agreement for the 1978-1979 school year made benefits available to teachers who were 50 years old. Teachers retiring between ages 50 and 62 would receive $4,000 per year, payable in equal monthly installments, for 10 years or until they reached age 65, whichever occurred first. Teachers retiring between ages 62 and 65 would receive $2,000 per year, also payable in equal monthly installments, until age 65. To be eligible for such payments a teacher must have had 10 years of continuous teaching prior to requesting retirement or be on the final step of the appropriate salary scale.

On June 15, 1978, the Attorney General issued an opinion, OAG, 1977-1978, No 5314, p 480 (June 15, 1978), in which he opined that a board of education of a school district may not agree in a collective-bargaining agreement to provide supplemental retirement benefits beyond those established by the statutory public school retirement system. In response to that opinion, the board refused to implement the early retirement benefit provision of the 1978-1979 contract unless the education association agreed to hold the board harmless if the provisions were determined to be unlawful. An agreement to that effect was entered into on October 4, 1978.

This action was commenced by the Rochester Education Association, William Jurva, a retired teacher who has been receiving early retirement benefits since the end of the 1977-1978 school year, and Ruth McDonald, a teacher eligible to retire and receive early retirement benefits, who wants to elect early retirement, but has not done so

because of the uncertainty as to the legality of the benefit. Plaintiffs sought a declaratory judgment that the early retirement benefits provision was valid and legal and that OAG, 1977-1978, No 5314 was erroneous.

The Attorney General filed a cross-complaint against the board, seeking a declaratory judgment that the agreement to provide early retirement incentive benefits, if found by the court to be lawful, establishes a pension plan or retirement system subject to the current funding requirements of Const 1963, art 9, § 24, and that the method of funding the pension plan violates this constitutional provision.

Plaintiffs moved for summary judgment on both their complaint and on the Attorney General's cross-complaint. The trial court granted plaintiffs' motion in its entirety, finding that the early retirement benefits were authorized by § 1255 of the Michigan School Code, MCL 380.1255; MSA 15.41255, and that the payments did not violate Const 1963, art 9, § 24. The Court of Appeals affirmed. 111 Mich App 595; 315 NW2d 178 (1981). This Court granted leave to appeal. 417 Mich 888 (1983). We affirm the decision of the Court of Appeals.

## II. SCHOOL CODE OF 1976, § 1255(1)

School districts possess such power as statutes expressly or by reasonably necessary implication grant to them. *Senghas v L'Anse Creuse Public Schools,* 368 Mich 557; 118 NW2d 975 (1962). Appellant argues that early retirement incentives are not authorized by the School Code of 1976, 1976 PA 451, MCL 380.1 *et seq.;* MSA 15.4001 *et seq.* Section 1255(1) of the School Code, MCL 380.1255(1); MSA 15.41255(1) provides:

"In the process of establishing salaries or determining other working conditions, the board of a school district or the board of a local act school district may use general funds of the school district to provide other related benefits of an economic nature on a joint participating or nonparticipating basis with school employees for employees of the school district."

Appellant reasons that whether or not early retirement incentives are "other related benefits of an economic nature" depends on whether they are related to "salaries" or "other working conditions".

We agree that early retirement incentives are not "salaries". A salary is a "periodic allowance made as compensation to a person for his official or professional services or for his regular work". *People v Lay,* 193 Mich 476, 488; 160 NW 467 (1916).

The Court of Appeals found that early retirement incentives were working conditions within the meaning of § 1255. Appellant argues that early retirement incentives are not "other working conditions" since that term has been construed to mean conditions of the place of work. Our review of the case law suggests, however, that the term "working conditions" has been construed broadly as well as narrowly, its meaning varying from statute to statute.[1] It appears, therefore, that the term "working conditions" is not uniformly de-

[1] The term received a very narrow construction in *Corning Glass Works v Brennan,* 417 US 188; 94 S Ct 2223; 41 L Ed 2d 1 (1974), an action under § 3 of the Equal Pay Act of 1963, 29 USC 206(d)(1). That section required equal pay for the same work performed under "similar working conditions". The Court held that the legislative history revealed that "working conditions" was intended as an industrial term of art equivalent to a worker's surroundings and hazards. 417 US 202. A similar construction of the term has been used under the Occupational Safety and Health Act, 29 USC 653(b)(1), and the term has been interpreted to mean "the environmental area in which an employee customarily goes about his daily tasks". *Southern Rail-*

fined, and that we must ascertain the intended meaning of the term as it is used in § 1255 of the School Code of 1976. The history of this provision aids this inquiry.

Section 1255 was formerly § 617 of the School Code of 1955, MCL 340.617; MSA 15.3617. The original provision, as amended in 1963,[2] read as follows:

"Sec. 617. (a) The board of education of any school district in the process of establishing salaries may use money in the general fund of the school district to provide insurance protection on a joint participating or non-participating basis with school employees for employees of the school district on any or all of the following at the discretion of the school board:

"(1) Provide for hospital and surgical benefits for employee and dependents.

"(2) Provide health and accident type coverage.

"(3) Provide group life insurance coverage.

\* \* \*

"(b) A board of education at the request of an employee may use the payroll deduction plan."

In OAG, 1967-1968, No 4583, p 301 (October 11, 1968), the Attorney General opined that school boards lacked authority under both PERA[3] and the

___

*way Co v Occupational Safety & Health Review Comm,* 539 F2d 335, 339 (CA 4, 1976), *cert den* 429 US 999 (1976).

On the other hand, the expression "working conditions" as it is used in § 6 of the Railway Labor Act, 45 USC 156, is broadly interpreted. "Working conditions" under the RLA may include actual, objective working conditions such as a unilateral decision by the employer to modify its scheduling system. *Independent Federation of Flight Attendants v Trans World Airlines, Inc,* 655 F2d 155, 157 (CA 8, 1981).

[2] Section 617 was added to the School Code by a 1956 amendment, 1956 PA 215. The 1963 amendment, 1963 PA 96, is not relevant to this inquiry.

[3] The Attorney General's opinion was premised on the theory that the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455 (1) *et seq.,* is a general act covering other public employers in addition to

School Code of 1955 to pay teachers a sum at retirement based upon the number of years of service in the school system. Since there was no specific statutory authority under the School Code authorizing the payment of this kind of benefit, the Attorney General's inquiry focused on whether such authority could be implied from the power to pay wages. Noting that the Legislature had made express provision for pensions and annuities for public school employees and applying the doctrine of *expressio unius est exclusio alterius, Sebewaing Industries, Inc v Village of Sebewaing,* 337 Mich 530, 545; 60 NW2d 444 (1953), the Attorney General concluded that the school board did not have implied authority to pay other similar benefits at retirement.

The Attorney General further opined that school boards had no express or implied statutory authority to pay a sum based on the number of years of service at retirement or when the employee leaves the employment of a school district other than by retirement. The Attorney General reasoned, citing *Bowler v Nagel,* 228 Mich 434; 200 NW 258 (1924), and *Attorney General v Connolly,* 193 Mich 499; 160 NW 581 (1916), that the purpose of retirement benefits is to encourage continuous service in public employment, whereas the type of benefit under consideration may provide incentive for school personnel to leave their employment rather than continue it. Thus, authority to grant this type of benefit was found not to be reasonably necessary to enable boards of education to hire or retain public school teachers and administrators.[4]

school districts. Therefore, it reasoned that the general statutory language must be determined in the context of specific statutes dealing with boards of education and their employees, and that the specific statute, *i.e.,* the School Code, controls over general acts.

[4] The Attorney General's opinion concluded, *inter alia,* that school

Section 617 was amended in 1969 to provide as follows:

"The board of education of any school district in the process of establishing salaries or determining other working conditions may use money in the general fund of the school district to provide other related benefits of an economic nature on a joint participating or nonparticipating basis with school employees for employees of the school district.

"The board at the request of an employee may provide payroll deduction programs."

The amendment added "or determining other working conditions" to the phrase "in the process of establishing salaries". It also replaced "to provide insurance protection" with "to provide other related benefits of an economic nature", and deleted reference to the specifically enumerated hospital and surgical benefits, health and accident coverage, and group life insurance coverage. Section 1255 of the School Code of 1976 is identical to § 617 in all significant respects. One commentator has suggested that the 1969 amendment to § 617 was intended to undo the Attorney General's ruling in OAG, 1967-1968, No 4583. See Sachs, *Labor Law, 1969 Annual Survey of Michigan Law,* 16 Wayne L Rev 641, 644 (1970). Indeed, in a subsequent opinion letter to Representative William A. Ryan, the Attorney General opined:

---

boards had no authority to pay teachers the difference between the regular pay and the substitute pay for sick leave used beyond the allotted number of sick leave days, to pay for unexcused sick leave at the end of the school year or on termination of employment, to reimburse teachers for tuition credits earned beyond the baccalaureate degree, and to establish a sinking fund for the purpose of paying reimbursement of tuition or for sabbatical or terminal leave. The Attorney General found authority to pay one-half of the regular salary of a teacher on sabbatical leave.

"Since the School Code, *supra,* at that time, enumer-
ated, as in the then § 617 of the School Code, *supra,*
which benefits a school district could provide its em-
ployees, I concluded in OAG, 1967-1968, No 4,583, p 301
(October 11, 1968), that, for example, a school district
could not provide tuition reimbursement to its teachers
for postgraduate studies, since such a benefit had not
been explicitly authorized by law. However, by amend-
ing § 617 of the School Code, *supra,* to allow boards of
education to provide 'other related benefits of an eco-
nomic nature' in the immediately following session of
the legislature, the legislature clearly intended to con-
fer broad authority upon boards of education to provide
'fringe benefits' for school employees." Unpublished
letter opinion of the Attorney General to the Honorable
William A. Ryan (June 10, 1974). See also OAG, 1981-
1982, No 5848, p 35 (January 28, 1981).

We likewise conclude that the prompt amend-
ment of § 617 in response to OAG, 1967-1968, No
4583, *supra,* clearly evidences an intent to broaden
the authority of school boards to provide other
related benefits. This suggests that "other working
conditions" as used in § 617 of the 1955 School
Code and § 1255 of the 1976 code should be inter-
preted broadly to include fringe benefits. More-
over, the addition of the expression "other related
benefits of an economic nature" refutes appellant's
claim that "working conditions" is a narrowly
defined term meaning only physical conditions of
the workplace. Physical conditions of the work-
place are not "benefits of an economic nature",
and we therefore conclude that "other working
conditions" was intended to be more liberally in-
terpreted than the noneconomic physical condi-
tions of the workplace.

The conclusion that "working conditions" means
more than the physical environment of the work-
place is further supported by the observation that

the predecessor to § 1255, § 617 of the 1955 code, as originally enacted,[5] dealt only with the provision of health insurance, a fringe benefit. Given the fact that this section was concerned only with the provision of a fringe benefit, it is not logical to interpret the subsequent addition of the term "working conditions" as a term unrelated to other benefits.

Appellant further argues that § 1255 authorizes salary and other benefits only as compensation for the rendition of services. No persuasive authority is cited in support of this proposition. Moreover, there are many employee benefits which are not, strictly speaking, compensation for services rendered, but which confer some benefit to the school system. For example, a qualifying teacher may receive compensation while on sabbatical leave for professional improvement. MCL 380.1235; MSA 15.41235. While we agree with appellant that early retirement incentives are not compensation for services rendered, the school, nevertheless, receives a benefit in the form of the teacher's relinquishment of the right to continued employment. Early retirement incentives are benefits of an economic nature for the teacher, and the teacher's early departure from the school district is economically advantageous to the school district. We interpret § 1255 as being sufficiently broad to authorize this benefit.

We are mindful of the fact that another jurisdic-

[5] "The board of education of any school district in the process of establishing salaries is hereby permitted to use money in the general fund of the school district to provide insurance protection on a joint participating basis with school employees for any or all of the employees of the school district or any or all of the following at the discretion of the respective school boards:

"(1) Provide for hospital and surgical benefits for employee and dependents.

"(2) Provide health and accident type coverage."

tion has reached a different result with respect to this question. See, *e.g., Fair Lawn Ed Ass'n v Fair Lawn Bd of Ed,* 79 NJ 574; 401 A2d 681 (1979). Unlike the provision at issue here, the School Code provision at issue in *Fair Lawn* was worded very narrowly, and conferred authority on the school board to set only the "terms and tenure of employment, * * * salaries and time and mode of payment thereof". 79 NJ 580.

We hold that early retirement incentives are "other related benefits of an economic nature" and that therefore the school board has the authority under § 1255 of the School Code to provide this benefit. Appellees argued in the alternative that even if the School Code did not authorize the board to provide this benefit, the public employment relations act, MCL 423.215; MSA 17.455(15), authorized bargaining regarding early retirement incentives. The Attorney General does not argue that PERA prohibits early retirement incentives, but merely that PERA does not grant the board the power to confer this benefit. We hold that early retirement incentives are authorized by the School Code and that therefore we need not reach the question whether PERA also authorizes the benefits.

III. PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM

Appellant also argues that early retirement incentives are inimical to the purpose and actuarial soundness of the Public School Employees Retirement System, pursuant to the Public School Employees Retirement Act of 1979, MCL 38.1301 *et seq.;* MSA 15.893(111) *et seq.* Appellant reasons that the purpose of retirement systems is to encourage teachers to remain in public service by ensuring that they will receive a pension, whereas

the purpose of early retirement incentives is the opposite, *i.e.,* it encourages teachers to leave public service sooner than they would leave if there were no retirement incentive. Appellant further contends that early retirement incentives will adversely affect the retirement system because they will induce a substantial number of teachers to retire early, contrary to the actuarial assumptions of the retirement system.

We begin our discussion of this issue with the observation that the collective-bargaining agreement defines "retirement" with respect to the early retirement incentive as "termination of active employment with the Rochester Community Schools." There is no requirement that a "retiring" teacher be immediately eligible to collect pension benefits. Rather, a teacher can leave employment and collect the early retirement incentive payments before becoming eligible to receive pension benefits.

We are very sensitive to the claim of a strain placed on the actuarial soundness of the retirement system. There is no record evidence to support appellant's position that a large number of teachers will retire early because of the incentive. However, since the avowed purpose of the incentive is to encourage early termination of employment for eligible teachers over 50 years of age, and since many of these teachers may be eligible for pension payments at age 55,[6] it is reasonable to assume that some teachers will receive a pension at an earlier date than they would have had they not had an opportunity to collect an additional source of financial support, *i.e.,* early retirement incentive payments.

[6] MCL 38.1381; MSA 15.893(191) (formerly MCL 38.215; MSA 15.893[15]).

Nevertheless, we cannot find that a hypothetical burden on the actuarial basis of the pension system can defeat a grant of statutory authority to provide these benefits. Although there may be a logical relationship between adverse financial consequences and legislative intent, neither the Attorney General nor the minority cites, nor has our research discovered, any Michigan authority in support of this principle. By contrast, the court in *Fair Lawn Ed Ass'n v Fair Lawn Bd of Ed,* 79 NJ 574, 581-582; 401 A2d 681 (1979), not only premised its decision on the narrowness of the statutory provision being interpreted but also on precedent holding that it was "manifest that actions taken by a state agency which may substantially affect retirement age and thus the actuarial assumptions of a statutory pension system are impermissible unless clearly and unequivocally authorized by the Legislature". We have already held that the legislative history evidences a clear intent to permit school boards to provide these kinds of benefits. The presumed adverse effect on the actuarial soundness of the plan cannot defeat a clear delegation of broad authority to provide fringe benefits of an economic nature. If the Legislature determines that this type of fringe benefit threatens the fund, it is, of course, at liberty to remedy the problem. Given our conclusion that the legislative intent is clear, we hold that the potential for an adverse actuarial effect may not defeat the expressed intent to authorize the board to provide this benefit.

### IV. CONST 1963, ART 9, § 24

Lastly, the Attorney General argues that early retirement incentives violate Const 1963, art 9, § 24, which provides:

"The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

"Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities."

Appellant maintains that the early retirement incentive is a pension or retirement system under the common understanding of those terms, and that the early retirement incentive provisions of the collective-bargaining agreements entered into by plaintiffs and defendant board do not contain any arrangements or agreements for the funding of the retirement benefits promised.

We agree with the Court of Appeals that early retirement incentives are not benefits tied to time in service, but rather are compensation for a tenured teacher's waiver of the contractual right to continued employment. The dollar amount of the benefit is measured not by the number of years served (as it would be for purposes of calculating a pension), but rather by the number of years of relinquished employment. We find, therefore, that early retirement incentives are not "financial benefits arising on account of service rendered" and that Const 1963, art 9, § 24 is inapplicable.

Moreover, while we agree with the Attorney General that the contractual obligations of the early retirement incentives incurred by a present school board may fall on the shoulders of future taxpayers, we do not think that this fact alone brings the benefit within the purview of Const 1963, art 9, § 24. Our review of the record of the Constitutional Convention persuades us that the purpose of the provision was to prevent the shift-

ing of the burden for pensions from the taxpayers who derived benefit from the services rendered to future taxpayers by "back door" spending, *i.e.,* by diverting current funding to finance unfunded accrued liability. See *Kosa v State Treasurer,* 408 Mich 356, 367-368; 292 NW2d 452 (1980). The overriding concern of the delegates to the Constitutional Convention was the establishment and maintenance of the actuarial soundness of the state's pension systems, not with the protection of other financial systems. 1 Official Record, Constitutional Convention 1961, pp 770-775. If the school district were to fail to adequately fund the present accrued liability for pension benefits, the soundness of the pension system would be in jeopardy, whereas failure to provide adequate funds to pay retirement incentives would not have such an effect since those benefits are not paid from the retirement system. The retired teacher may have a cause of action for breach of contract, but because the retirement incentive is not a pension or retirement system, this claim is no different for constitutional purposes than the contractual claim any other party might have for agreements entered into by previous school boards.

Accordingly, we find that Const 1963, art 9, § 24 is not violated by the early retirement incentive provision in the collective-bargaining agreement.

The decision of the Court of Appeals is affirmed.

WILLIAMS, C.J., and RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with BOYLE, J.

LEVIN, J. *(dissenting).* The question presented is whether the School Code of 1976 authorizes a school district to agree to pay early retirement incentives. We would hold that a school district is not authorized to do so.

The state appropriates in excess of $500,000,000 per year to the public school employees' retirement systems, of which over $115,000,000 funds current service contributions.[1] The Attorney General alleges that sustaining the authority of school districts to pay early retirement incentives will have a serious adverse effect on those systems. The plaintiffs respond that it will not have an adverse effect if the Legislature fully funds the retirement systems. If early retirement incentives require that additional funds be provided in order to fund the systems fully, however, additional legislative appropriations would be required to cover the cost of early retirement incentive programs agreed to by school districts.

The instant case was decided by entry of a summary judgment without a factual record. We therefore do not know what the cost would be to the state of a decision of this Court sustaining the validity of such agreements.

I

It can indeed be argued that the question is one of law and that the meaning of § 1255 of the School Code of 1976 should be determined without regard to the cost to the state of a construction favoring the validity of such agreements. The potential cost to the state, however, has in our opinion considerable bearing on the likely legislative intent and cannot responsibly be ignored by this Court.

It appears from the complaint that school districts will be financially advantaged by early retirement incentive agreements. They can reduce their teaching staffs without discharging teachers

---

[1] 1983 PA 125.

and hire replacement teachers at lower salaries. But it also appears that such programs, by increasing the number of years that retired teachers would draw pensions from the state retirement systems, may substantially increase the drain on those systems and the attendant annual cost the state must bear to fund those retirement programs.

Although we do not have a record in this case, it appears from *Fair Lawn Ed Ass'n v Fair Lawn Bd of Ed,* 79 NJ 574, 582-583; 401 A2d 681 (1979), that the amounts potentially involved are large. It was there "estimated that a decrease of only one year in average retirement age would increase annual State contributions by nearly $12,000,000". The New Jersey Supreme Court took what we believe to be the responsible course in holding "that actions taken by a state agency which may substantially affect retirement age and thus the actuarial assumptions of a statutory pension system are impermissible *unless clearly and unequivocally authorized by the Legislature".* (Emphasis added.) There has been no such clear and unequivocal authorization by the Legislature in this case.

## II

The plausible linguistic argument in the opinion of the Court fails to take into account the language of § 4(1) of the Public School Employees Retirement Act of 1979[2] providing that "compensation" shall exclude "other fringe benefits paid by and from the funds of employers". We read that language as a declaration of public policy that fringe benefits paid from the funds of employers of public school employees shall not enlarge the cost

[2] MCL 38.1304; MSA 15.893(114), first added to the predecessor Public Retirement Act by 1963 PA 102, MCL 38.201; MSA 15.893(1).

to the state of funding public school employees' retirement systems. Where the Legislature has enacted two complete and self-contained statutory schemes addressing discrete problems, neither should be construed to frustrate the purposes and objectives of the other. See *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980). See also *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 648-650; 344 NW2d 773 (1984) (lead opinion).

A legislative policy of protecting state funded retirement systems from the cost of early retirement programs is also reflected in 1984 PA 3, which permits early retirement of state employees in a carefully constructed program designed both to protect the state retirement systems and to limit the number of persons who may avail themselves of early retirement. Act 3 limits the number of early retirees to those who are eligible and exercise the early retirement option in one month —May, 1984—and requires that the entire cost of that early retirement program be paid from the budgets of the departments of state government that will benefit therefrom so that the retirement systems are saved harmless from all added costs resulting from early retirement. The Court's construction of the School Code does not contain such safeguards, nor does it guard against the risk noted in the advice of the Department of Management and Budget respecting Act 3, that if the proposed one-time early retirement program were to be "repeated or made a permanent feature of the state retirement program (and strong pressure would exist to do it), it would result in adding significant long-term costs to the state retirement system".[3]

---

[3] Letter to the Governor dated September 15, 1983.

Early retirement incentives may constitute sound public policy. But this is a policy decision that the Legislature has reserved to itself. The Legislature has not delegated to the parties to this litigation the resolution of that question with all its fiscal implications for the people of this state.[4]

KAVANAGH, J., concurred with LEVIN, J.

[4] We see no need to consider the language of the PERA because the PERA only requires bargaining concerning a subject matter about which a school district is authorized to bargain. Clearly, the PERA does not authorize school districts to bargain concerning the payment of benefits that the Legislature has not authorized a school district to pay.

The disposition we believe to be correct makes it unnecessary to consider whether Const 1963, art 9, § 24 requires a school district to fund in full its obligations under an early retirement incentive program.