The Honorable John "M" Lipton Speaker of the House P.O. Box 311 Warren, AR 71671-0311
Dear Representative Lipton:
This is in response to your request for an opinion concerning the legality of a personnel policy of the Warren School District. Specifically, you have set out the following portion of a "Staff Reduction in Force Policy" and inquire as to its legality:
 Voluntary Retirement Inventive — The incentive for voluntary retirement shall be the district paying in full each year until age 65 a life insurance policy equivalent to that of an active employee and the total family plan health insurance policy cost equivalent to that of an active employee.
You have posed the following specific questions with regard to this policy:
 Since this school board policy is a part of personnel policies, can teacher salary funds be spent in implementation of this policy? If teacher salary funds cannot be used to implement this policy, can regular operational funds be used?
 Also, would it be lawful to reimburse a public school employee for health insurance and life insurance premiums as part of an early retirement incentive?
It is my opinion that no school funds may be expended in the implementation of this policy because such an expenditure is, in my opinion, preempted by and contrary to state law.
When a teacher retires from the district, he or she may elect to continue insurance coverage with the district, and is to have the full cost of the premiums for such coverage deducted from his or her retirement benefits. This procedure is authorized at A.C.A. §6-17-1112 (1987), which provides in pertinent part that:
 (a) Members of the Teacher Retirement system and the Public Employees Retirement System who have rendered, or shall render, service as employees of the public schools who hereafter retire and receive retirement benefits under such systems shall be eligible to participate in the group insurance program instituted pursuant to the provisions of this subchapter and other laws enacted to implement such programs, provided that such persons are participating in the group insurance program at the time of retirement.
 (b) . . . However, persons drawing retirement benefits under the Teacher Retirement System, and the Public Employees Retirement System who wish to participate or continue to participate in the group insurance program provided for herein shall pay the full amount of the premium or cost of the policy, and such premium or cost shall be deducted from the retirement benefit checks of such participants.
[Emphasis added.]
It is my understanding that the early retirement policy in question allows the school district to reimburse the retired teacher for the amount deducted from the benefit check to cover the premium. It is my opinion that such a policy is contrary to the intent of the statute above that retired employees electing to continue insurance coverage with the district pay the full amount of the premium themselves. In my opinion, the intent of this section was not to have public funds pay for the health and life insurance of retired school district employees, even if in the form of reimbursement. The statute provides that such premiums "shall" be paid by the "person drawing retirement benefits. . . ." It does not authorize payment of the premiums, or reimbursement of the premiums, by the school district. The statute therefore requires that the retirants bear this expense. Although school districts are granted broad authority over the conduct of the public schools and the expenditure of school funds (see A.C.A. § 6-13-620(12) (Cum. Supp. 1991)), in my opinion an expression of legislative authorization is necessary prior to upholding the validity of a local reimbursement policy of this nature.
Additionally, A.C.A. § 24-7-702 (1987) sets out the conditions under which members of the Teacher Retirement System may voluntarily retire early. It provides for a reduced annuity in such circumstances. It provides for a reduced annuity in such circumstances. It does not provide any incentive in the way of payment of insurance premiums. It is my opinion that the legislature has preempted the field governing the retirement of these employees, and that local policies which supplement the effect of these state laws or influence retirement decisions of employees are unauthorized. See Fair Lawn EducationAssociation v. Fair Lawn Board of Education, 79 N.J. 574,401 A.2d 681 (1979), and generally, King v. Cochran,419 F. Supp. 54 (W.D. Ark. 1976), aff'd 551 F.2d 1133 (8th Cir. 1977). Seecontra Jurva v. Attorney General, 111 Mich., App. 595, 315 M.W.2d 178 (1981), aff'd 419 Mich. 209, 351 N.W.2d 813 (1984). The laws governing teacher retirement are comprehensive and detailed. It has been held that where state regulation is so pervasive as to make reasonable the inference that the state has left no room for supplemental legislation, local provisions in the same field are prohibited. Kollmeyer v. Greer,267 Ark. 632, 593 S.W.2d 29 (1980). This was one of the bases of the decision in Fair Lawn Education Association, supra, wherein it was stated:
 It is axiomatic that a municipality may not act in an area which the Legislature has preempted. [Citations omitted.] In deciding whether a particular municipal activity has been preempted, the Court must determine whether the Legislature intended its action to preclude the exercise of local authority. [Citation omitted.] In the context of this case, we must therefore inquire whether the Legislature, by enacting [the teacher retirement system] intended to prohibit the adoption of [local early retirement remuneration] plans such as the one at issue.
* * *
 In assessing the legislative intent, the primary factor to be considered is whether the municipal action adversely affects the legislative scheme.
401 A.2d at 686-687.
The court in Fair Lawn concluded that the local plan could not stand because, in encouraging school district employees to retire early, the actuarial soundness of the fund for teacher retirement might be jeopardized. The effect of such an early retirement policy, the court reasoned, which would encourage older, more highly compensated teachers to retire, to the benefit of the district, which could then hire younger, less highly compensated teachers, would be to place a greater burden on the state retirement system. The court thus held the plan preempted by state law.[1]
Additionally, the Arkansas legislature has expressed an intent elsewhere in the statutes that pension systems are a matter for state, rather than local regulation. See A.C.A. §14-43-601(a)(1)(F). Finally, the legislature has seen fit, at least for certain public employees, to provide for public payment, at the retiree's option, of health insurance premiums as an incentive for early retirement. See A.C.A. § 24-3-216 (Cum. Supp. 1991); A.C.A. § 24-4-732 (Cum. Supp. 1991); A.C.A. $24-5-122 (Cum. Supp. 1991) and A.C.A. $24-6-102 (Cum. Supp. 1991). It has also provided for payment of special cash allowances to certain employees to encourage early retirement. A.C.A. § 24-7-101. It has not, however, seen fit to so provide for local school district employees who are members of the Teacher Retirement System.
It is therefore my opinion that legislative authorization, or a judicial determination contrary to this opinion is required prior to the implementation of the proposed early retirement incentive policy.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The court also held that the local board of education had not been delegated the authority by the legislature, under the statutes of New Jersey, to make the payments contemplated by the early retirement remuneration plan, as such payments were not "compensation" or "customary fringe benefits."